**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

DOMKOG MO, AS ADMINISTRATOR OF THE ESTATE OF LUETH MO,

Plaintiff,

5:23-cv-1602 (ECC/MJK)

v.

ONONDAGA COUNTY, ONONDAGA COUNTY SHERIFF'S OFFICE, SHERIFF TOBIAS SHELLEY, *in his individual capacity*, DEPUTY SHERIFF JOHN ROSELLO, *in his individual capacity*, AND DOE OFFICERS 1-10,

Defendants.

---

HAWA AYEK, AS ADMINISTRATRIX OF THE ESTATE OF DHAL APET,

Plaintiff,

5:23-cv-1608 (ECC/MJK)

v.

ONONDAGA COUNTY, ONONDAGA COUNTY SHERIFF'S OFFICE, SHERIFF TOBIAS SHELLEY, *in his individual capacity*, DEPUTY SHERIFF JOHN ROSELLO, *in his individual capacity*, AND DOE OFFICERS 1-10,

Defendants.

---

Jesse P. Ryder, Esq., *for Plaintiffs*
John G. Powers, Esq., *for Defendants*

**Hon. Elizabeth C. Coombe, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I. INTRODUCTION

The Plaintiffs in the above-captioned, related actions, Domkog Mo, the father of Lueth Mo, as administrator of his son's estate, and Hawa Ayek, the mother of Dhal Apet, as administratrix of her son's estate, commenced these actions against Defendants Onondaga County, Onondaga County Sheriff's Office, Sheriff Tobias Shelley, in his individual capacity, Deputy Sheriff John Rosello, in his individual capacity, and Doe Officers 1-10. *Domkog Mo, as administrator of the estate of Lueth Mo (Mo)*, Case No. 5:23-cv-1602 (N.D.N.Y.) Complaint ¶¶ 5–9 (Mo Compl.), Dkt. No. 1; *Hawa Ayek, as administratrix of the estate of Dhal Apet (Ayek)*, Case No. 5:23-cv-1608 (N.D.N.Y) Complaint ¶¶ 5–9 (Ayek Compl.), Dkt. No. 1. The actions arise out of the deaths of Plaintiffs' sons who were fatally shot while they were in a car that was fleeing from the police. *Id.* Plaintiffs seek relief pursuant to 42 U.S.C. § 1983 and state law. *See generally* Mo Compl.; Ayek Compl.

Presently before this Court are Defendants' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure as to all causes of action except the § 1983 excessive force claim (first cause of action); Defendants seek to dismiss that cause of action only "to the extent it purports to state a claim for relief under the Fourth Amendment." *Mo*, Dkt. Nos. 35-1, 48-1 (corrected memorandum of law); *Ayek*, Dkt. No. 35-1. The motions are fully briefed. *Mo*, Dkt. Nos. 40, 48, 50; *Ayek*, Dkt. Nos. 35-1, 40, 46. For the following reasons, Defendants' motions are granted in part and denied in part.

## II. FACTS[1]

On September 6, 2023, Defendant Deputy Sheriff John Rosello (Rosello) "responded to a call of suspicious activity in DeWitt, New York." Mo Compl. ¶ 16; Ayek Compl. ¶ 16. "Upon arriving at the scene," Rosello "directed his patrol vehicle into the front of" another vehicle in which Mo and Apet were passengers (the Mo and Apet vehicle). Mo Compl. ¶ 16; Ayek Compl. ¶ 16. At the same time, another "vehicle fled from the scene at a high rate of speed." Mo Compl. ¶ 16; Ayek Compl. ¶ 16.

The driver of the Mo and Apet vehicle backed away from the patrol vehicle and drove forward "passing through a large space between" Rosello "and his patrol car." Mo Compl. ¶ 16; Ayek Compl. ¶ 16. Rosello fired his service weapon at the Mo and Apet vehicle, "striking both the front and passenger's side." Mo Compl. ¶ 16; Ayek Compl. ¶ 16. The Mo and Apet vehicle "proceeded onward away from the scene," and, when "the abandoned vehicle was discovered in the City of Syracuse," Mo was hemorrhaging in the backseat, and Apet, who had "bled out on account of [Rosello's] multiple gun shots aimed at the vehicle" was dead. Mo Compl. ¶ 16; Ayek Compl. ¶ 16. Mo later died as a result of his injuries. Mo Compl. ¶ 16; Ayek Compl. ¶ 16. After the shooting, Shelley stated that Rosello "was not able to get out of the fleeing vehicle's way because he was in a narrow space between his patrol vehicle and the workbench." Mo Compl. ¶ 18; Ayek Compl. ¶ 18.

On November 16, 2023, the Surrogate's Court of Onondaga County appointed Mo's father the administrator of his son's estate and Apet's mother the administratrix of her son's estate. Mo

[1] These facts are drawn from the complaints. *Mo*, Dkt. No. 1; *Ayek*, Dkt. No. 1. The Court assumes the truth of, and draws reasonable inferences from, the well-pleaded factual allegations, *see Lynch v. City of New York*, 952 F.3d 67, 74–75 (2d Cir. 2020), but does not accept as true any legal conclusions, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Compl. ¶ 12; Ayek Compl. ¶ 12.

## III. STANDARD OF REVIEW

Defendants filed motions for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). In deciding a Rule 12(c) motion, the same standard is applied as that applicable to a motion under Rule 12(b)(6), and "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"Although a complaint need not contain detailed factual allegations, it may not rest on mere labels, conclusions, or a formulaic recitation of the elements of the cause of action, and the factual allegations 'must be enough to raise a right to relief above the speculative level.'" *Lawtone-Bowles v. City of New York*, No. 16-cv-4240, 2017 WL 4250513, at *2 (S.D.N.Y. Sept. 22, 2017) (quoting *Twombly*, 550 U.S. at 555). The Court will grant a motion for judgment on the pleadings "if, from the pleadings, the moving party is entitled to judgment as a matter of law." *VCG Special Opportunities Master Fund Ltd. v. Citibank, N.A.*, 594 F. Supp. 2d 334, 340 (S.D.N.Y. 2008). "On a 12(c) motion, the court considers 'the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case.'" *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (quoting *Roberts v. Babkiewicz*, 582 F.3d 418, 419 (2d Cir. 2009)).[2]

---

[2] This paragraph's discussion of the legal standard for a Rule 12(c) motion is taken from Judge Sannes' thorough discussion in *Waugaman v. City of Albany, New York*, No. 1:18-cv-194 (BKS/CFH), 2020 WL 564636, at *1 (N.D.N.Y. Feb. 5, 2020).

## IV. DISCUSSION

The complaints assert eleven causes of action against Defendants: (1) violations of 42 U.S.C. § 1983, specifically (a) excessive force in violation of the Fourth Amendment, against all Defendants (first cause of action); (b) *Monell* liability (custom and practice) against the County (second cause of action); (c) *Monell* liability (negligent hiring training, supervision and retention) against the County (third cause of action); and (d) assault and battery against Rosello (fourth cause of action); and (2) violations of New York law, specifically (a) intentional infliction of emotional distress against all Defendants (fifth cause of action); (b) negligent training, hiring, retention, discipline and supervision against all Defendants (sixth cause of action); (c) assault against all Defendants (seventh cause of action); (d) battery against all Defendants (eighth cause of action); (e) wrongful death against all Defendants (ninth cause of action); (f) punitive damages against all Defendants (tenth cause of action); and (g) *respondeat superior* against all Defendants (eleventh cause of action). *See generally* Mo Compl.; Ayek Compl.

### A. Abandoned Claims

Defendants argue that Plaintiffs abandoned the following claims by not addressing them in their opposition papers:[3] (1) all claims asserted against the Sheriff's Office, *see Mo*, Dkt. No. 48-1 at 10–11[4]; *Ayek*, Dkt. No. 35-1 at 5; (2) the state law tort claims against Shelley, *Mo*, Dkt. No. 48-1 at 12–13; *Ayek*, Dkt. No. 35-1 at 12–13; (3) the state law claims for negligent training, discipline, retention, and supervision, *Mo*, Dkt. No. 48-1 at 26; *Ayek*, Dkt. No. 35-1 at 20–21; (4)

[3] Defendants also argue that Plaintiffs abandoned *Monell* claims based on a ratification theory and, regardless of the theory, against Shelley. *See Mo*, Dkt. No. 50 at 2; *Ayek*, Dkt. No. 46 at 2. The Court need not address this issue because the complaints allege *Monell* claims only against the County (second and third causes of action), and ratification is not mentioned. *See* Mo Compl. ¶¶ 29–43; Ayek Compl. ¶¶ 29–43.

[4] Unless otherwise noted, citations to page numbers refer to pagination generated by the ECF system.

the *respondeat superior* claims, *id.*; and (5) the punitive damages claims as a distinct cause of action, *Mo*, Dkt. No. 48-1 at 28; *Ayek*, Dkt. No. 35-1 at 23.

"[I]n the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned." *Jackson v. Fed. Exp.*, 766 F.3d 189, 198 (2d Cir. 2014). Given that counseled Plaintiffs did not respond to Defendants' arguments that these claims should be dismissed, the Court concludes that Plaintiffs have abandoned these claims, and they are dismissed. *See Pinder v. S. DiCarlo, Inc.*, No. 1:18-cv-296 (BKS/ATB), 2020 WL 437000, at *9 n.8 (N.D.N.Y. Jan. 28, 2020) (granting motion for judgment on the pleadings as to a claim where "Plaintiffs . . . did not respond to Defendants' argument as for why the . . . claims . . . should be dismissed"); *see also Block v. City Univ. of New York*, No. 23-cv-7715, 2025 WL 1114738, at *4 (E.D.N.Y. Apr. 15, 2025) (citing *Laface v. E. Suffolk Boces*, 349 F. Supp. 3d 126, 161 (E.D.N.Y. 2018) ("District courts in this circuit have found that a plaintiff's failure to respond to contentions raised in a motion to dismiss . . . constitute[s] an abandonment of those claims.") (quotation omitted) (collecting cases); *Voelkl v. Town of Greece*, No. 6:23-cv-6098, 2025 WL 690345, at *10 (W.D.N.Y. Mar. 4, 2025) (collecting cases where district courts have concluded that a plaintiff abandoned a claim by failing to respond to arguments made in a motion to dismiss).

For these reasons, the following claims are dismissed: (1) all claims asserted against the Sheriff's Office; (2) the state law tort claims against Shelley; (3) the state law claims for negligent training, discipline, retention, and supervision (sixth cause of action); (4) the *respondeat superior* claims (eleventh cause of action); and (5) the punitive damages claims as a distinct cause of action (tenth cause of action).

**B. 42 U.S.C. § 1983 Excessive Force Claims Against Shelley**

Defendants move to dismiss the excessive force claims against Shelly because the complaints do not adequately allege his personal involvement. *See* Mo Compl. ¶¶ 21–28; Ayek Compl. ¶¶ 21–28; *Mo*, Dkt. No. 48-1 at 11–13, Dkt. No. 50 at 2–4; *Ayek*, Dkt. No. 35-1 at 6–8, Dkt. No. 46 at 2–4. Plaintiffs respond that the complaints sufficiently allege Shelley's personal involvement because (1) he had a "'supervisory role' in causing both [plaintiffs'] deaths . . . on account of his 'own culpable action or inaction in the training, supervision, or control of his subordinates,'" *Mo*, Dkt. No. 40 at 13 (quoting *Odom v. Matteo,* 772 F. Supp. 2d 377, 403 (D. Conn. 2011); *Ayek*, Dkt. No. 40 at 11 (quoting *Odom,* 772 F. Supp. 2d at 403; (2) he failed to remedy a wrong after being informed of it by attempting to "cover-up" Rosello "unreasonabl[y resorting] to the use of force," *Mo*, Dkt. No. 40 at 14–15; *Ayek*, Dkt. No. 40 at 11 – 13; and (3) as the head supervisor and final policymaker, he "showed deliberate indifference to the citizens of Onondaga County by personally refusing to remediate the Sherriff's Office's policy on use of force, initiate proper training . . . and to take disciplinary action." *Mo*, Dkt. No. 40 at 15–16 (citing Mo Compl. ¶¶ 30, 31, 38); *Ayek*, Dkt. No. 40 at 12–13 (citing Ayek Compl. ¶¶ 30, 31, 38).

"[T]here is no special rule for supervisory liability. Instead, a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676). "A supervisor's 'mere knowledge . . .' is not sufficient because that knowledge does not 'amount[ ] to the supervisor's violating the Constitution.'" *Sellers v. Andrea*, No. 3:22-cv-585, 2022 WL 17830715, at *4 (D. Conn. Dec. 21, 2022) (quoting *Tangreti*, 983 F. 3d at 616–17) (additional quotation omitted). "The focus is on what the *supervisor* did or caused to be done, 'the resulting injury attributable to his conduct, and the *mens rea* required of him to be

held liable, which can be no less than the *mens rea* required of anyone else.'" *Tangreti*, 983 F.3d at 618 (quoting *Porro v. Barnes*, 624 F.3d 1322, 1327–28 (10th Cir. 2010) (Gorsuch, J.)) (emphasis in original).

Following *Tangreti*, standalone claims for supervisory liability are "no longer cognizable." *Kweller v. Cnty. of Broome*, No. 3:25-cv-343 (AJB/ML), 2025 WL 3280821, at *16 (N.D.N.Y. Nov. 25, 2025); *see also Kistner v. City of Buffalo*, No. 21-cv-526, 2023 WL 144915, at *15 (W.D.N.Y. Jan. 10, 2023) ("[S]ince *Tangreti*, section 1983 claimants can no longer rely on the theories of supervisory liability or failure to discipline to establish a supervisor's personal involvement in a constitutional violation.").

At the outset, Plaintiffs rely in part on allegations from their *Monell* claim (second cause of action) to support their arguments that they sufficiently alleged Shelley's personal involvement. *See Mo*, Dkt. No. 40 at 13–15 (citing Mo Compl. ¶¶ 30, 31, 35, 36 38); *Ayek*, Dkt. No. 40 at 11–13 (citing Ayek Compl. ¶¶ 30, 31, 35, 36, 38). As Defendants point out, those allegations were not incorporated into the excessive force claim (first cause of action), and the claims against Shelley should therefore "be dismissed with prejudice on that basis alone." *Mo*, Dkt. No. 50 at 3–4, *Ayek*, Dkt. No. 46 at 3–4. Given that Defendants cite no legal authority indicating support for their argument, the Court considers those allegations in evaluating these arguments. Nevertheless, Plaintiffs appear to conflate the legal standards governing municipal liability with those applicable to attaching liability to an individual defendant for personal involvement in an underlying constitutional violation.

The only arguable actions taken by Shelley alleged in the complaints occurred after the shooting. Specifically, the complaints allege that after the shooting, Shelly stated that Rosello "was not able to get out of the fleeing vehicle's way because he was in a narrow space between

his patrol vehicle and a workbench," and "[h]e had nowhere to flee to. This whole thing happen[ed] in seconds. He had no options," and that Shelley later "'doubled down' in his support of his Deputy's decision to fire upon a fleeing vehicle." Mo Compl. ¶¶ 18, 19; Ayek Compl. ¶¶ 18, 19. Plaintiffs argue that these allegations show that Shelley "'failed to remedy the wrong' . . . where Shelley intentionally articulated a false and inaccurate representation of the material facts and circumstances that befell [Rosello] as an attempt to cover-up [Rosello's] unreasonabl[y resorting] to the use of deadly force" and "reflexively and unquestionably determining that [Rosello] acted reasonably 'after being informed of the violation,' and thereby, would not be removed from any kind of duty nor would his position be restricted." *Mo*, Dkt. No. 40 at 14–15 (quoting *Colon,* 58 F.3d at 873; also citing Mo Compl. ¶¶ 30, 31, 38); *Ayek*, Dkt. No. 40 at 11–12 (quoting *Colon,* 58 F.3d at 873; also citing Ayek Compl. ¶¶ 30, 31, 38).

Failure to remedy a wrong may support supervisory liability for some § 1983 claims, such as an Eighth Amendment deliberate indifference to conditions of confinement claim, even after *Tangreti*. *See King v. Virts*, 826 F. Supp. 3d 480, 493 (W.D.N.Y. 2026) ("Recent Second Circuit caselaw has . . . held that a plaintiff may establish liability on a § 1983 claim 'based on a showing that [a] supervisor was 'directly involved in the incident itself' or 'failed to remedy a wrong after learning of' that wrong.'") (quoting *Suarez v. Morton*, 170 F.4th 33, 61 (2d Cir. 2026) (cleaned up); *see also id.* at 493 n.6 (explaining that in *Suarez*, "the Second Circuit Court of Appeals included the 'fail[ure] to remedy a wrong after learning of that wrong' as a basis for finding a supervisor personally involved in an Eighth Amendment deliberate indifference to conditions of confinement claim.") (quoting *Suarez,* 170 F.4th at 60–61).

But even accepting Plaintiffs' allegations as true, and drawing all inferences in favor of Plaintiffs, these allegations do not plausibly allege that Shelley was personally involved in any

alleged excessive force. "A supervisor's 'mere knowledge . . .' is not sufficient.'" *Sellers*, 2022 WL 17830715, at *4 (quoting *Tangreti*, 983 F. 3d at 616–17) (additional quotation omitted); *see also In re New York City Policing During Summer 2020 Demonstrations*, 548 F. Supp. 3d 383, 410 (S.D.N.Y. 2021) ("'Receipt of notice after the violation is insufficient to constitute personal involvement in the violation.'") (quoting *Rahman v. Fisher*, 607 F. Supp. 2d 580, 585 (S.D.N.Y. 2009)). Furthermore, Shelley's post-incident support for Rosello's actions "suggests only that he approved of" his actions "after the fact—not that he had any role in designing those tactics in the first place." *In re New York City Policing During Summer 2020 Demonstrations*, 548 F. Supp. 3d at 410. Indeed, there are no allegations that Rosello communicated with Shelley before Rosello fired his service weapon, and Plaintiffs identify no legal authority indicating that Shelley's post-incident statement establishes personal involvement.

Plaintiffs also argue they have sufficiently alleged Shelley's personal involvement because he was the "final policymaker" and "showed deliberate indifference to the citizens of Onondaga County by personally refusing to remediate the Sheriff's Office's policy on use of force, initiate proper training to address instances of unreasonable force, and to take disciplinary action in response to unreasonable force that it would serve as a deterrent to the perpetuation of unreasonable force in the future." *Mo*, Dkt. No. 40 at 15 (citing Mo Compl. ¶¶ 30, 31, 38); *Ayek*, Dkt. No. 40 at 12 (citing Ayek Compl. ¶¶ 30, 31, 38). They also argue that they have "sufficiently alleged that [Shelley] perpetuated a custom and/or policy of withholding necessary training from its deputies . . . ." because Shelley is the "head supervisor" who has "'oversight responsibility for 'the training, hiring, screening, instruction, supervising and disciplining' of Rossello who deprived the decedent[s] and Plaintiff[s] of their clearly established constitutional rights." *Mo*, Dkt. No. 40 at 15 (quoting Mo Compl. ¶¶ 35, 36); *Ayek*, Dkt. No. 40 at 12–13 (quoting Ayek Compl. ¶¶ 35,

36).

Even after *Tangreti,* district courts in this Circuit have determined that plaintiffs may establish personal involvement for supervisors who create and continue unconstitutional polices. *See Dixon v. Farina*, No. 9:25-cv-68 (AMN/ML), 2026 WL 482664, at *14 (N.D.N.Y. Feb. 20, 2026) ("[N]umerous district courts within the Second Circuit have determined that Eighth Amendment claims against supervisors who are responsible for the continuation of allegedly unconstitutional policies remain possible following *Tangreti*.") (collecting cases); *see also Sanchez v. Nassau Cnty.*, 662 F. Supp. 3d 369, 416 (E.D.N.Y. 2023) ("Post-*Tangreti*, district courts in the Circuit have determined that personal involvement still may be established for a supervisory defendant if he or she created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom.") (cleaned up); *Brunache v. Annucci*, No. 22-cv-196, 2023 WL 146850, at *12 (W.D.N.Y. Jan. 9, 2023) ("While *Tangreti* overruled *Colon*'s five-factor test . . . it did not 'suggest' that a defendant who 'created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom,' cannot be found liable under Section 1983.") (citations omitted). But "'conclusory allegations that a defendant was involved in the creation and enforcement of unconstitutional policies cannot sustain a claim of personal involvement.'" *Anwar v. New York Dep't of Civil Serv.*, No. 25-cv-120 (AMN/PJE), 2026 WL 2531893, at *8 (N.D.N.Y. Aug. 27, 2026) (quoting *Rindgen v. Cnty. of Broome*, No. 24-cv-1325 (AJB/ML), 2025 WL 2772080, at *17 (N.D.N.Y. Sept. 29, 2025) (in turn, quoting *Tangreti*, 983 F.3d at 617 n.4).

Even accepting Plaintiffs' allegations as true, and drawing all inferences in favor of Plaintiffs, these allegations are not sufficient to infer that Shelley had any personal involvement in the alleged excessive force. Plaintiffs have only set forth conclusory allegations that Shelley was

"involved in the creation and enforcement of" allegedly unconstitutional policies regarding use of force, training, hiring, screening, instructing, supervising, and disciplining officers such as Rosello, which "cannot sustain a claim of personal involvement." *Anwar*, 2026 WL 2531893, at *8. Allegations that Shelley was "head supervisor with Defendant County's Sheriff's Office," *Mo*, Dkt. No. 40 at 16; *Ayek*, Dkt. No. 40 at 12, are also not sufficient. *Kweller*, 2025 WL 3280821, at *16 (holding that claims against supervisor must be dismissed when they are "speculative, conclusory, or based solely on their supervisory status, rather than their individual actions.")

Moreover, Plaintiffs do not explain how Shelley's purported failure to remedy an unspecified wrong or deliberate indifference caused their injuries. Nor does their reliance on allegations from the *Monell* claim bridge the gap between municipal liability and the personal involvement required to impose liability on an individual defendant in an underlying constitutional violation. *Mo*, Dkt. No. 40 at 14–15 (citing Mo Comp. ¶¶ 30, 31, 38); *Ayek*, Dkt. No. 40 at 11–12 (quoting Ayek Compl. ¶¶ 30, 31, 38).

Accordingly, Plaintiffs have not plausibly alleged Shelley's personal involvement as required under Section 1983, and the excessive force claims against Shelley are therefore dismissed.

### C. Fourth Amendment – Excessive Force Claims

Defendants argue that the excessive force claims should be dismissed to the extent that they rely on the Fourth Amendment because the complaints do not allege that the decedents were "the *intended* target[s] of the force" and the Fourteenth Amendment, not the Fourth Amendment, applies when people other than the intended targets of the force are injured. *Mo*, Dkt. No. 48-1 at 15; *Ayek*, Dkt. No. 35-1 at 9. Defendants therefore take the position that the complaints do not sufficiently allege that Mo and Apet were seized pursuant to the Fourth Amendment, and that

"courts within the Second Circuit have dismissed Fourth Amendment claims brought by plaintiffs who were the unintentional victims of force exerted by police officers." *Mo*, Dkt. No. 48-1 at 13–15 (quoting *Tennyson v. Francemone*, No. 16-cv-929 (BKS/MJK), 2024 WL 3398364, at *15 (N.D.N.Y. July 12, 2024); *Ayek*, Dkt. No. 35-1 at 9–10 (quoting *Tennyson*, 2024 WL 3398364, at *15). Plaintiffs respond that the "crux of plaintiff[s'] Section 1983 Fourth Amendment excessive force claim[s] allege[ ] that [Rosello]'s use of force was patently unreasonable under the circumstances . . . ." *Mo*, Dkt. No. 40 at 25; *Ayek*, Dkt. No. 40 at 10.

"[A]ll claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989) (emphasis omitted). "[A] Fourth Amendment seizure . . . occur[s] . . . only when there is a governmental termination of freedom of movement *through means intentionally* applied," *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 844 (1998) (emphasis in original) (internal citation and quotation omitted), not "the accidental effects of otherwise lawful government conduct," *see Medeiros v. O'Connell*, 150 F.3d 164, 168 (2d Cir. 1998) (internal quotation and citation omitted). As the Second Circuit explained in *Medeiros,* "where [an unintended individual] is hit by a bullet intended for the [intended individual], the mishap is the 'unintended consequence[ ] of government action[ ]' and . . . such consequences cannot 'form the basis for a fourth amendment violation.'" *Medeiros*, 150 F.3d at 169 (alteration in original) (quoting *Ansley v. Heinrich*, 925 F.2d 1339, 1344 (11th Cir. 1991)).

Plaintiffs allege that on September 6, 2023, Rosello fired his service weapon multiple times into a vehicle, and that Mo and Apet, who were passengers in that vehicle, ultimately died as a

result of those gunshot wounds. *See* Mo Compl. ¶ 16; Ayek Compl. ¶ 16.[5] Accepting the allegations in the complaints as true, and drawing all reasonable inferences in the favor of Plaintiffs, Defendants have not established that the excessive force claims should be dismissed to the extent that they rely on the Fourth Amendment. Here, the complaints allege that Rosello shot Mo and Apet. The question of whether Rosello intended to shoot Mo and Apet is not one that can be decided at this stage of the litigation. To the extent that Defendants rely on *Tennyson* and other cases, they are all distinguishable because the district courts were considering summary judgment motions *after* discovery, not motions for judgment on the pleadings. *See Tennyson*, 2024 WL 3398364, at *15 (granting motion for summary judgment as to Fourth Amendment claim); *Longwa v. Larregui*, No. 3:07-cv-733, 2011 WL 4005406, at *4 (D. Conn. Sept. 9, 2011) (same); *Pickering v. Mercado*, No. 03 cv 5654, 2006 WL 1026677, at *7 (E.D.N.Y. Apr. 17, 2006) (same); *Hickey v. City of New York*, No. 07 Civ. 6506, 2004 WL 2724079, at *14 (S.D.N.Y. Nov. 29, 2004) (same).

Defendants' motions to dismiss the excessive force claims to the extent that they rely on the Fourth Amendment are therefore denied.

### D. *Monell* Liability

Defendants argue that they are entitled to judgment on the pleadings on Plaintiffs' *Monell* claims (second and third causes of action). Specifically, they argue that Plaintiffs have not stated *Monell* claims as a matter of law because they do not sufficiently allege a policy or custom, or a

[5] Plaintiffs assert for the first time in their opposition papers that Rosello may have been aware of a report involving two stolen vehicles and may have thought that the Mo and Apet vehicle was one of the stolen vehicles. *Mo*, Dkt. No. 40 at 22–23; *Ayek*, Dkt. No. 40 at 8. These facts, which were not alleged in the complaints, are not considered. *K.D. v. White Plains Sch. Dist.*, 921 F. Supp. 2d 197, 209 n.8 (S.D.N.Y. 2013) (a plaintiff "cannot amend [his] complaint by asserting new facts or theories for the first time in opposition to [a] motion to dismiss") (collecting cases); *see also Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (rejecting new claim raised for the first time in plaintiff's opposition to motion to dismiss).

failure to train, discipline, and/or supervise. *See Mo*, Dkt. No. 48-1 at 15–23, Dkt. No. 50 at 5–8; *Ayek*, Dkt. No. 35-1 at 10–18, Dkt. No. 50 at 5–7. Plaintiffs respond that they have sufficiently alleged both predicates for *Monell* liability. *Mo*, Dkt. No. 40 at 25–29; *Ayek*, Dkt. No. 40 at 19–22.

It is well settled that "a municipality cannot be made liable [under § 1983] by application of the doctrine of *respondeat superior*." *Lucente v. Cnty. of Suffolk*, 980 F.3d 284, 297 (2d Cir. 2020) (quotations omitted). Rather, "[i]n order to hold the County liable under § 1983, plaintiff must put forth sufficient evidence to show that individual defendants' unconstitutional actions were taken pursuant to an official municipal policy, custom, or practice." *Thornton v. Cnty. of Albany*, No. 9:14-cv-679 (DNH/CFH), 2016 WL 5793714, at *7 (N.D.N.Y. Oct. 4, 2016) (citing *Monell v. Dept. of Soc. Servs. of City of New York*, 436 U.S. 658, 690–91 (1978)).

"A municipal policy or custom may be established where the facts show: (1) a formal policy, officially promulgated by the municipality, *Monell*, 436 U.S. at 690; (2) action taken by the official responsible for establishing policy with respect to a particular issue, *Pembaur v. Cincinnati*, 475 U.S. 469, 483–84 (1986); (3) unlawful practices by subordinate officials so permanent and widespread as to practically have the force of law, *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127–30 (1988); or (4) a failure to train or supervise that amounts to 'deliberate indifference' to the rights of those with whom the municipality's employees interact, *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)." *Rivas v. Onondaga Cnty.*, No. 5:19-cv-844 (BKS/TWD), 2025 WL 2675826, at *16 (N.D.N.Y. Sept. 18, 2025) (internal citations omitted). "To demonstrate *Monell* liability, a plaintiff must allege a violation of constitutional rights by employees of the municipality and (1) the existence of a municipal policy or custom that caused his injuries beyond merely employing the misbehaving officer[s]; and (2) a causal connection – an

affirmative link – between the policy and the deprivation of his constitutional rights." *Werkheiser v. Cnty. of Broome*, 655 F. Supp. 3d 88, 109 (N.D.N.Y. 2023) (cleaned up).

**a. Widespread Practice**

Defendants argue that Plaintiffs fail to sufficiently allege the existence of a policy or custom. *Mo*, Dkt. No. 48-1 at 18–19; *Ayek*, Dkt. No. 35-1 at 14–15. Plaintiffs respond that they sufficiently allege the County has "a custom, policy, practice and pattern of failing to discipline their Police Officers for violating the constitutional rights of its citizens," based on the fact that (1) Rosello was not disciplined for his use of force resulting in the deaths of Mo and Apet and (2) "[t]he record of this case, based on investigation, research, complaints submitted to the [Sheriff's Office], as well as records, newspaper report of claims of excessive use-of-force and racial profiling by the" Sheriff's Office, *Mo*, Dkt. No. 40 at 28 (citing Mo Compl. ¶ 43); *Ayek*, Dkt. No. 40 at 21 (citing Ayek Compl. ¶ 43); Mo Compl. ¶ 35, Ayek Compl. ¶ 35.

"To show a policy or custom through a 'widespread practice,' a plaintiff must attribute a subordinate's conduct to the actions or omissions of higher-ranking officials with policymaking authority." *Miller v. Cnty. of Monroe*, No. 23-cv-6649, 2024 WL 2804435, at *4 (W.D.N.Y. May 31, 2024) (citing *Amnesty America v. Town of West Hartford*, 361 F.3d 113, 126 (2d Cir. 2004) (citations omitted)). To do so, a plaintiff may show that (i) a "policymaker ordered or ratified the subordinate['s] actions, or (ii) "the policymaker was aware of a subordinate's unconstitutional actions, and consciously chose to ignore them, effectively ratifying the actions." *Amnesty America*, 361 F.3d at 126. A plaintiff may also plead the existence of de facto customs or policies "by citing [ ] complaints in other cases that contain similar allegations." *Gaston v. Ruiz*, No. 17-cv-1252, 2018 WL 3336448, at *6 (E.D.N.Y. July 6, 2018). "Except in very rare cases, a 'custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere

employee of the municipality.'" *Smith v. City of Syracuse*, No. 5:19-cv-997 (BKS/ATB), 2020 WL 1937411, at *3 (N.D.N.Y. Apr. 21, 2020) (quoting *Newton v. City of New York*, 566 F. Supp. 2d 256, 271 (S.D.N.Y. 2008)); *see also Brogdon v. City of New Rochelle*, 200 F. Supp. 2d 411, 427 (S.D.N.Y. 2002) ("A single incident by itself is generally insufficient to establish the affirmative link between the municipal policy or custom and the alleged unconstitutional violation.").

The allegations Plaintiffs point to are not sufficient because they are conclusory and lack factual detail. *See* Mo Compl. ¶ 35, Ayek Compl. ¶ 35 (alleging that "[t]he record of this case, based on investigation, research, complaints submitted to the [Sheriff's Office], as well as records, newspaper report of claims of excessive use-of-force and racial profiling by the" Sheriff's Office shows a policy and/or custom); Mo Compl. ¶ 36; Ayek Compl. ¶ 36 (alleging that the policy, custom, and practice "led" Defendant Doe Officers "to use excessive force against [Mo and Apet]"); Mo Compl. ¶ 38; Ayek Compl. ¶ 38 (alleging legal conclusions that that "[t]here is ample evidence to create a jury question regarding whether, from the top down, the [Sheriff's Office] took an unduly permissive attitude toward its officers' use-of-force prior to, and in the wake of the incident . . . ." and that a "reasonable jury could conclude that [the Sheriff's Office] 'subordinate officers felt empowered to use force with relative impunity and that, as a result, used excessive force on plaintiff[s] in this case.'") (quoting *Hulett v. City of Syracuse*, 253 F. Supp. 3d 462, 500–02 (N.D.N.Y. 2017)). As a result, there are no "explicit factual allegations" to support any inference that a "municipal policy or custom exists," or that the County endorsed any such policy. *Wozar v. Campbell*, 763 F. Supp. 3d 179, 205 (D. Conn. 2025). *See D.J. by Comfort v. Corning-Painted Post Area Sch. Dist.*, 722 F. Supp. 3d 148, 162 (W.D.N.Y. 2024) ("To the extent that any allegations in [the operative pleading] suggest that the purported conduct was pursuant to a policy,

they are wholly conclusory and lack any factual detail.") (citing *Vasquez v. New York City Police Dep't*, No. 20-cv-4641, 2023 WL 8551715, at *5 (S.D.N.Y. Dec. 11, 2023) ("Similarly, courts dealing with *Monell* claims have disregarded the use of conclusory allegations that do not provide additional support that a plaintiff's experience is consistent with a larger pattern of similar conduct." (quotations omitted))).

Finally, relying on the single use of force challenged in this lawsuit is not sufficient. "Importantly, courts have dismissed custom or practice *Monell* claims that rely solely on one instance of conduct to prove the existence [of] a persistent and widespread custom. In fact, the very foundation of *Monell* liability rests upon the notion that isolated acts by non-policymaking municipal employees are generally not sufficient to demonstrate a municipal custom, policy, or usage that would justify liability." *D.J. by Comfort*, 722 F. Supp. 3d at 161 (cleaned up) (collecting cases).

In sum, "'[t]he complaint is bereft of any detail about the nature of any suspect policies, practices, or procedures, much less how they caused' the violation of Plaintiff[s'] rights." *LeClair v. Raymond*, No. 1:19-cv-28 (BKS/DJS), 2020 WL 5027278, at *13 (N.D.N.Y. Aug. 25, 2020) (quoting *Moore v. Norwalk*, No. 17-cv-695, 2018 WL 4568409, at *4 (D. Conn. Sept. 24, 2018)).

**b. Negligent Hiring, Training, Supervision & Retention**

Defendants argue that Plaintiffs have not alleged facts sufficient to show a failure to train such as identifying any specific deficiency in training. *Mo*, Dkt. No. 50 at 5; *Ayek*, Dkt. No. 46 at 4. Plaintiffs point to their allegation that Rosello's use of force "reflects the County's lack of training such that this one instance is sufficient to underscore the paltry training in deadly use of force that [the County] is providing its sheriff deputies." *Mo*, Dkt. No. 40 at 28 (citing *Canton*, 489 U.S. at 390); *Ayek*, Dkt. No. 40 at 21 (citing *Canton*, 489 U.S. at 390).

Two similar but distinct theories of recovery are available to a plaintiff asserting municipal liability based on a showing of deliberate indifference: failure to supervise/discipline and failure to train. *See Amnesty America*, 361 F.3d at 127. "To establish *Monell* liability for a failure to supervise or discipline, a plaintiff must plead that (1) there was a pattern of allegations of or complaints about, or a pattern of actual, similar unconstitutional activity, and (2) the municipality consistently failed to investigate those allegations." *Miller,* 2024 WL 2804435, at *8 (citing *Tieman v. City of Newburgh*, No. 13-cv-4178, 2015 WL 1379652, at *21–22 (S.D.N.Y. Mar. 26, 2015)). "A need for greater supervision or discipline 'may be demonstrated through proof of repeated complaints of civil rights violations' that are not followed by a "meaningful attempt . . . to investigate or to forestall further incidents.'" *Id.* (quoting *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995)); *see also Treadwell v. Cnty. of Putnam*, No. 14-cv-10137, 2016 WL 1268279, at *4 (S.D.N.Y. Mar. 30, 2016).

Like the policy allegations, the failure to supervise/discipline allegations are insufficient to state a *Monell* claim. The complaints allege the County has "a custom, policy, pattern and practice of inaction regarding the discipling of police officers for excessive use of force; and . . . . failing to discipline its police officers for violation the constitutional rights of its citizens." Mo Compl. ¶ 43; Ayek Compl. ¶ 43. These conclusory allegations without any factual detail are not sufficient. *See D.J. by Comfort*, 722 F. Supp. 3d at 162.

"To establish *Monell* liability for a failure to train, a municipality may be liable 'when city policymakers are on actual or constructive notice that a particular omission in their training program causes [ ] employees to violate citizens' constitutional rights . . . [but] the policymakers choose to retain that program.'" *Miller*, 2024 WL 2804435, at * 8 (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)). "A failure to train constitutes a policy or custom under § 1983 only where

'in light of the duties assigned to [. . .] employees[,] the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [municipality] can reasonably be said to have been deliberately indifferent to the need." *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)).

A plaintiff must "identify a specific deficiency in [a defendant's] training program and establish that that deficiency is closely related to the ultimate injury, such that it actually caused the constitutional deprivation." *Alwan v. City of New York*, 311 F. Supp. 3d 570, 579 (E.D.N.Y. 2018) (quoting *Wray v. City of New York*, 490 F.3d 189, 196 (2d Cir. 2007)). A plaintiff "need only plead [a municipality's] failure to train caused the constitutional violation" because "[i]t is unlikely that a plaintiff would have information about the city's training programs or about the cause of the misconduct at the pleading stage." *Amnesty America*, 361 F.3d at 130 n.10. Nevertheless, courts still require that a plaintiff "provide more than a simple recitation of their theory of liability, even if that theory is based on a failure to train." *Tieman*, 2015 WL 1379652, at *22 (collecting cases); *see Collins v. City of New York*, 923 F. Supp. 2d 462, 478 (E.D.N.Y. Feb. 15, 2013) (noting that under *Iqbal*, a plaintiff "must allege, not only a viable [failure to train] theory, but facts that render the theory plausible"). Accordingly, a plaintiff must "allege facts that support an inference that the municipality failed to train its [employees], that it did so with deliberate indifference, and that the failure to train caused his constitutional injuries." *Tieman*, 2015 WL 1379652, at *22 (collecting cases).

Here, the allegations to support the failure-to-train theory are also insufficient. The complaints allege that the County breached its duty to train "by allowing its sheriff deputies to engage in lawless behavior and conduct, including terrorizing the citizens of Onondaga County" and that the County "provides inadequate training regarding the lethal use of force, which fails to

draw a bright line that clearly defines constitutional violations for lethal use of force policy." *Mo* Compl. ¶¶ 42, 43; Ayek Compl. ¶¶ 42, 43. These allegations are not sufficient because they are conclusory and lack factual detail. *See Collins*, 923 F. Supp. 2d at 478–79 (noting that under *Iqbal*, a plaintiff "must allege, not only a viable [failure to train] theory, but facts that render the theory plausible . . . and [therefore] insufficient to make a plausible case for *Monell* liability.").

In sum, neither the failure to supervise/discipline nor the failure to train allegations are sufficient because they are conclusory, they lack factual details, and they rely on the force challenged in this lawsuit. *See, e.g.*, *Triano v. Town of Harrison, NY*, 895 F. Supp. 2d 526, 535 (S.D.N.Y. 2012) (collecting cases applying the *Iqbal* pleading standard to *Monell* pleadings); *see also Missel v. Cnty. of Monroe*, 351 F. App'x 543, 545 (2d Cir. 2009) ("The allegations that [Defendant] acted pursuant to a 'policy,' without any facts suggesting the policy's existence, are plainly insufficient." Accordingly, Defendants' motions for judgment on the pleadings as to Plaintiffs' *Monell* claims (the second and third causes of action) are granted.

**E. Federal Assault and Battery Claims**

Defendants argue that the fourth cause of action, assault and battery under Section 1983 against Rosello, Mo Compl. ¶¶ 44–45; Ayek Compl. ¶¶ 44–45, should be dismissed as duplicative of Plaintiffs' excessive force claims. *See Mo*, Dkt. No. 48-1 at 23–24, Dkt. No. 50 at 9–10; *Ayek*, Dkt. No. 35-1 at 18–19; Dkt. No. 46 at 10. Plaintiffs respond that the claims are not duplicative because they have distinct standards and relief. *See Mo*, Dkt. No. 40 at 29–30; *Ayek*, Dkt. No. 40 at 22–23.

Section 1983 assault and battery claims are consistently dismissed by courts as "duplicative of [an] excessive force claim." *Boyler v. City of Lackawanna*, 287 F. Supp. 3d 308, 323 (W.D.N.Y. 2018) (finding that "Plaintiff's fifth and sixth causes of action, alleging an assault and battery under

§ 1983, respectively, are properly formulated as excessive force claims."); *see also Raymond v. Bunch*, 136 F. Supp. 2d 71, 81 (N.D.N.Y. 2001) ("Because plaintiff's constitutional assault claim is nothing more than a claim of excessive force . . . it is subsumed within his [excessive force] cause of action and is hereby dismissed."). Here, the Court agrees that Plaintiffs' Section 1983 assault and battery claims are duplicative of their excessive force claims, and the claims are therefore dismissed.

**F. New York State Assault, Battery, and Intentional Infliction of Emotional Distress Claims**

Defendants argue that Plaintiffs' claims for assault, battery, and intentional infliction of emotional distress under New York State law, Mo Compl. ¶¶ 46-48, 54–58; Ayek Compl. ¶¶ 46-48, 54–58, should be dismissed because they are duplicative of Plaintiffs' excessive force claims. *See Mo*, Dkt. No. 48-1 at 24–26, Dkt. No. 50 at 9–11; *Ayek*, Dkt. No. 35-1 at 19–20, Dkt. No. 46 at 9–10. Plaintiffs respond that the claims are not duplicative because, for the assault and battery claims, the elements are different, and for the IIED claim, it is an "alternative theory of liability different in kind than a Section 1983 excessive force claim." *See Mo*, Dkt. No. 40 at 30–34; *Ayek*, Dkt. No. 40 at 23–26.

"It is true that 'a number of courts . . . have held that the Fourth Amendment excessive force standard applies to assault and battery claims against a police officer under New York State law.'" *Lalonde v. City of Ogdensburg, et al.*, 662 F. Supp. 3d 289, 310 (N.D.N.Y. 2023) (citing *Jackson v. Cnty. of Ulster*, No. 1:22-cv-148 (TJM/ATB), 2022 WL 2954370, at *9 (N.D.N.Y. July 26, 2022); *see also Posr v. Doherty*, 944 F.2d 91, 95 (2d Cir. 1991) (stating that "except for § 1983's requirement that the tort be committed under color of state law, the essential elements of [excessive force and state law assault and battery claims] [a]re substantially identical" under New York State law)). "'To the extent [ ] Defendants are arguing that state law assault and battery

claims cannot be asserted in tandem with a Fourth Amendment excessive force claim, they are incorrect.'" *Quezada v. City of Waterbury*, No. 3:22-cv-77, 2023 WL 5096144, at *5 (D. Conn. Aug. 9, 2023) (quoting *Cascaccia v. City of Rochester*, No. 6:17-cv-6323, 2018 WL 324420, at *7 (W.D.N.Y. Jan. 8, 2018)). Although these claims are "substantially identical," "they are not duplicative because an excessive force claim under Section 1983 has the additional requirement that it 'be committed under color of state law.'" *Id.* (quoting *Posr*, 944 F.2d at 94–95). "Accordingly, it is well-established that a plaintiff may pursue a Fourth Amendment excessive force claim and state law assault and battery claims in the same action." *Id.* (quoting *Cascaccia*, 2018 WL 324420, at *7 and citing *Estate of Jaquez v. City of New York*, 104 F. Supp. 3d 414, 439 (S.D.N.Y. 2015)). The cases Defendants cite are distinguishable because the claims in those cases were dismissed after discovery. *See Woods v. Szakacs*, No. 15-cv-027 (BKS/ATB), 2017 WL 11567918, at *1–2 (N.D.N.Y. May 25, 2017) (claims dismissed on a motion in limine); *Blot v. Town of Colonie*, No. 14-cv-0991 (GTS/CFH), 2017 WL 61943, at *22 (N.D.N.Y. Jan. 5, 2017) (granting summary judgment where the Court also concluded that the arrest was lawful as a matter of law); *Johnson v. Tuffey*, No. 9:01-cv-1907 (MAD), 2011 WL 4345285, at *6 (N.D.N.Y. Sept, 15, 2011) (granting summary judgment on Fifth and Fourteenth Amendment claims as duplicative of excessive force claim).

Turning to Plaintiffs' IIED claims, "'the New York Court of Appeals has questioned whether an intentional infliction claim can ever be brought where the challenged conduct falls well within the ambit of other traditional tort liability,' and '[a]ll four Appellate Division courts have answered the question and held that it cannot.'" *Lopez v. Cnty. of Suffolk*, No. 23-cv-2230, 2026 WL 2186014, at *11 (E.D.N.Y. July 29, 2026) (quoting *Salmon v. Blesser*, 802 F.3d 249, 256–57 (2d Cir. 2015) (dismissing IIED claim where conduct could give rise to battery claim)). "This is

because infliction of emotional distress torts 'ha[ve] [their] roots in the acknowledgment by the courts of the need to provide relief in those circumstances *where traditional theories of recovery do not.*'" *Id.* (quoting *Lee v. McCue*, 410 F. Supp. 2d 221, 226 (S.D.N.Y. 2006)). As a result, courts dismiss IIED claims "where other torts—like assault and battery—impose liability for the complained of conduct." *Id.* (citing *Crews v. Cnty. of Nassau*, 996 F. Supp. 2d 186, 214) (E.D.N.Y. 2014) ("Even assuming *arguendo* that plaintiff could meet all four elements of an IIED claim, New York courts do not allow IIED claims where the conduct complained of falls well within the ambit of other traditional tort liability." (quotation omitted)); *Hepburn v. City of New York*, No. 21-CV-4158, 2025 WL 1640205, at *18 (E.D.N.Y. June 10, 2025) ("Because the conduct at issue and any resulting damages are entirely encompassed by Plaintiff's claims for false arrest and excessive force, Plaintiff's IIED [ ] claims are dismissed.")). As a result, Plaintiffs' IIED claims are dismissed because the underlying conduct is actionable under the traditional torts of assault and battery (claims which, as stated previously, will proceed).

As a result, Defendants' motions for judgment on the pleadings is granted as to Plaintiffs' New York state law IIED claims, and denied as to Plaintiffs' New York state law assault and battery claims.

### G. New York State Wrongful Death Claims

Regarding Plaintiffs' wrongful death claims under New York State law, Mo Compl. ¶¶ 59–68, Ayek Compl. ¶¶ 59–68, Defendants move for judgment on the pleadings to the extent those claims seek damages other than pecuniary losses. *See Mo*, Dkt. No. 48-1 at 27–28, Dkt. No. 50 at 11; *Ayek*, Dkt. No. 35-1 at 21–23, Dkt. No. 46 at 11. Plaintiffs respond that a jury should decide damages, and the Court should not defer to a statute that would limit remedies. *See Mo*, Dkt. No.

40 at 34–37; *Ayek*, Dkt. No. 40 at 26–28.[6]

"In New York, damages in a wrongful death action are limited to fair compensation for the pecuniary injuries resulting from the decedent's death to the persons for whose benefit the action is brought." *Maddox,* 2025 WL 1070361, at *4 (cleaned up). "The New York wrongful death statute does not permit recovery for grief or for loss of society, affection and conjugal fellowship-all elements of the generic phrase loss of consortium." *Id.* (cleaned up). "[T]he essence of the cause of action for wrongful death in [New York] State is that the plaintiff's reasonable expectancy of future assistance or support by the decedent was frustrated by the decedent's death." *Gonzalez v. New York City Housing Auth.*, 572 N.E.2d 598, 601 (N.Y. 1991) (internal citation omitted).

Therefore, under New York State law, Plaintiffs are limited to pecuniary loss damages under a wrongful death cause of action.

## V. CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendants' motions for partial judgment on the pleadings under Federal Rule of Civil Procedure 12(c) (Case No. 5:23-cv-1602 at Dkt. No. 35 and Case No. 5:23-cv-1608 at Dkt. No. 35) are **GRANTED in part and DENIED in part;** and it is further

**ORDERED** that Defendants' motions for judgment on the pleadings are **GRANTED** to the extent that

(1) the complaints are **DISMISSED** against Defendant the Onondaga County Sheriff's Office,

[6] To the extent that Plaintiffs appear to assert a new cause of action of "conscious pain and suffering" in their opposition briefs (*Mo*, Dkt. No. 40 at 36; *Ayek*, Dkt. No. 40 at 27), Plaintiffs cannot amend their complaints through motion papers. "'[A] party is not entitled to amend its complaint through statements made in motion papers.'" *See, e.g.*, *Soules v. Conn., Dep't of Emergency Servs. and Pub. Prot.*, 882 F.3d 52, 56 (2d Cir. 2018) (quoting *Wright*, 152 F.3d at 178).

(2) the complaints are **DISMISSED** against Defendant Sheriff Tobias Shelley,

(3) Plaintiffs' *Monell* claims against Defendant Onondaga County premised on Onondaga County's liability for excessive force (the second cause of action) are **DISMISSED**, and

(4) Plaintiffs' *Monell* claims against Defendant Onondaga County premised on Onondaga County's negligent hiring, training, supervision, and retention (the third cause of action) are **DISMISSED**,

(5) Plaintiffs' federal assault and battery claims against Defendant Deputy Sheriff John Rosello (the fourth cause of action) are **DISMISSED**,

(6) Plaintiffs' state-law claim of intentional infliction of emotional distress against all Defendants (the fifth cause of action) is **DISMISSED**,

(7) Plaintiffs' state-law claims of negligent training, hiring, retention, discipline, and supervision against all Defendants (the sixth cause of action) are **DISMISSED**,

(8) Plaintiffs' state-law claims of wrongful death against all Defendants (the ninth cause of action) are **DISMISSED** solely as to the extent the claims seek damages beyond pecuniary loss,

(9) Plaintiffs' state-law claims of punitive damages as a distinct cause of action against all Defendants (the tenth cause of action) are **DISMISSED**, and

(10) Plaintiffs' state-law claims of *respondeat superior* against all Defendants (the eleventh cause of action) are **DISMISSED**; and it is further

**ORDERED** that Defendants' motions for judgment on the pleadings are in all other respects **DENIED.**

**IT IS SO ORDERED.**

Dated: September 28, 2026

Elizabeth C. Coombe
U.S. District Judge